# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **LINDA ROLLINS** | * | **CIVIL ACTION NO. 08-0387** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ST. JUDE MEDICAL, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM ORDER

Before the undersigned magistrate judge is a hybrid motion to reopen discovery and to continue hearing on the pending motion for summary judgment filed by plaintiff, Linda Rollins. [doc. # 69]. The motion is opposed. For reasons set forth below, the motion to reopen discovery is GRANTED, but the motion to continue the hearing on the pending motion for summary judgment is DENIED.[1]

## Background

On February 20, 2007, Linda Rollins underwent an angiogram performed by Dr. J. Michael Barraza. (Petition). She contends that a medical device known as an Angio-Seal was used during the procedure and that there were "problems with the deployment of the Angio-Seal." *Id.* After the procedure, Rollins developed a large hematoma in her right groin and complained of pain in her leg, whereupon she returned to the hospital and was rushed into emergency surgery, performed by Dr. Frank Sartor, for a right external iliac to distal common

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

femoral bypass with a Gore-Tex graft and a thrombectomy. *Id.* According to Rollins, this procedure neither cleared the thrombus nor restored a pulse to the foot; therefore, a popliteal exploration was performed below the knee with selective thrombectomies on the posterior tib and anterior tibial vessels. *Id.* In his operative report, Dr. Sartor noted that the Angio-Seal was sitting "in the middle of the artery" and that "there was a lot of damage to the common femoral artery." *Id.*

Rollins contends that the Angio-Seal device was defective, and that the defect caused her injuries and damages. (Petition). Accordingly, on February 15, 2008, she filed the instant petition for damages in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, against the alleged manufacturers of the Angio-Seal device: St. Jude Medical; Kensey-Nash Corporation; Tyco International, Inc.; Wyeth, Inc.; and Tyco Healthcare Group, LP. *Id.* On March 24, 2008, defendants removed the case to federal court on the basis of diversity, 28 U.S.C. § 1332. (Notice of Removal).

Following removal, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which by October 2008, resulted in two amended complaints and the dismissal of some of plaintiff's claims. [*See* doc. #s 37-29]. In April 2009, the parties agreed to dismiss the various defendants and effectively substituted St. Jude Medical, Cardiology Division, Inc. d/b/a St. Jude Medical Cardiovascular Division, a wholly owned subsidiary of St. Jude Medical, Inc. ("St. Jude") as the sole defendant in this matter. [*See* doc. #s 48-50].

Meanwhile, on December 18, 2008, the court issued a scheduling order that set forth various deadlines in this matter which have become acutely relevant to the issues now before the court. (Scheduling Order [doc. # 45]). For instance, plaintiff's initial witness list was due April 24, 2009; she was further required to identify her experts and deliver their reports to defendant by

May 15 and 26, 2009, respectively. *Id*. Discovery was to be completed by June 25, 2009, with any motion to compel due by the same date. *Id*. The dispositive motion deadline was set for July 10, 2009. *Id*. Finally, the Scheduling Order cautioned that "motions for extensions of time must be filed as soon as possible, but in any event, not later than the day before the existing deadline." *Id*.

On June 26, 2009, St. Jude filed the pending motion for summary judgment seeking dismissal of plaintiff's remaining claims in no small part due to plaintiff's failure to produce any evidence during discovery to support her claims. [doc. # 53].[2] On July 23, 2009, plaintiff filed a motion to extend her time to file an opposition to the motion for summary judgment and to set a status conference to discuss an extension of the deadlines set forth in the Scheduling Order. [doc. # 65]. The undersigned granted plaintiff an extension of time until July 31, 2009, to oppose the motion for summary judgment, but otherwise denied her request for a status conference. (July 24, 2009, Order [doc. # 66]).

On July 31, 2009, plaintiff filed her opposition to defendant's motion for summary judgment and attached *inter alia* an affidavit from Steven Jones, Ph.D., a biomedical engineer at Louisiana Tech University. (Pl. Opp., Exhs. B-C [doc. # 67]). Dr. Jones averred that based upon Drs. Barraza and Sartor's operative reports and his own knowledge of the Angio-Seal device, that had the device been working properly, it would not have been "sitting in the middle of the patient's artery" as found by Dr. Sartor. *Id*. Jones further opined that more likely than not, the Angio-Seal device used by Dr. Barraza on Linda Rollins was defectively manufactured, thus causing Rollins' damages. *Id*.

---

[2] "Given the complete lack of any evidence supporting Plaintiff's claims, now that discovery has closed, the Court should dismiss the original and amended Complaints against St. Jude Medical in their entirety, with prejudice and on the merits." (MSJ, Memo., pg. 2).

On August 6, 2009, St. Jude sought leave of court to file a reply brief which argued, *inter alia,* that plaintiff's opposition and proffered evidence did not resolve the core issues that formed the basis of St. Jude's motion: "no specific product identification; no evidence of any specific manufacturing or packaging defect; no evidence of any specific product failure; and no evidence of causation." (Def. Reply Memo., pg. 3 [doc. # 74]).[3] Defendant objected to Dr. Jones's affidavit at least in part on the grounds that it was untimely; it was not an expert report; and he lacked the proper foundation to render opinions in the case. *Id*. at pgs. 4-5. St. Jude further moved to strike Dr. Jones's affidavit due to plaintiff's failure to timely disclose the evidence. *Id*. at pg. 6.

On August 7, 2009, (the day after St. Jude filed its motion for leave to file a reply memorandum), Rollins filed the instant motion to reopen discovery and to continue the hearing on the motion for summary judgment. [doc. # 69]. In her motion, plaintiff's counsel admitted that due to his heavy caseload, he failed to comply with pertinent deadlines in the court's scheduling order in this matter, but represented that he has now associated another attorney to help him with his caseload. *Id*. Plaintiff stated that the additional discovery is "essential" to oppose the pending motion for summary judgment. *Id*. Plaintiff's counsel represented that he

> has a discovery plan in place that includes working with opposing counsel concerning the inadequacies that plaintiff believes are in the defendant's responses to written discovery, filing for the appropriate remedy if it cannot be resolved, supplementing the discovery with written discovery tailored to a manufacturing defect, scheduling the treating physicians in this case and scheduling a 30(b)(6) deposition of the defendant.

Affidavit of James Wilkerson, Pl. Exh. B [doc. # 69].[4]

---

[3] The undersigned granted St. Jude leave to file the proposed reply memorandum. (August 11, 2009, Order [doc. #73]).

[4] Plaintiff also filed a supplemental memorandum in opposition to defendant's motion for summary judgment acknowledging that he had just retained Dr. Jones, but that enough

On August 13, 2009, St. Jude filed an opposition to plaintiff's motion to reopen and continue the motion for summary judgment arguing, among other things, that it has been prejudiced by "having to respond to Plaintiff's erratic, last minute, internally inconsistent motion practice that undermines the entire judicial process." (Opp. Memo., pgs. 3-4 [doc. # 79]).

The matter is now before the court.

## Discussion

### I.  Motion to Reopen Discovery

The discovery deadline in this matter was set for June 25, 2009, pursuant to the court's December 18, 2008, Scheduling Order.  Rule 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).  Good cause is met when the party seeking relief demonstrates that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoted source omitted).  If diligence constitutes an indispensable component of a request to extend a scheduling deadline, then plaintiff's motion is clearly lacking.

However, "[i]n the context of an untimely motion to submit expert reports, designate experts, or amend the pleadings, the Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice." *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp.2d 488, 493 (S.D. Tex. Jan. 21, 2009) (citing

---

discovery had not yet been completed for Jones to issue a final report.  (Pl. Suppl. Memo., pg. 4 [doc. # 72]).  Plaintiff argued, however, that the circumstantial evidence was so strong that even without an expert, she has met her burden of production.  *Id*.

*Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997) (submit expert reports); *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990) (designate expert witnesses); *S & W Enters., LLC*, 315 F.3d at 536 (amend the pleadings). One or more district courts have employed this test for purposes of a motion to reopen discovery. *Hernandez, supra* (citations omitted). The court will do the same here, especially since plaintiff seeks to extend the expert witness deadlines as well as the discovery deadline.

1) <u>Explanation for Failure to Adhere to the Deadline</u>

Plaintiff's counsel, Mr. Richard Fewell, has attributed his failure to comply with the various scheduling order deadlines in this matter to his heavy caseload, to a severely ill associate attorney who had to leave the firm, and to another associate attorney who simply "did not work out." (Affidavit of Richard Fewell, Pl. Exh. A). Fewell added that he has recently associated yet another attorney, Mr. James Wilkerson, in whom he places the utmost confidence. *Id.*

While the undersigned is not indifferent to the difficulties experienced by solo or small firm practitioners such as Mr. Fewell, these issues were remediable and foreseeable long before the deadlines expired in this matter. As counsel of record, it was ultimately Mr. Fewell's responsibility to ensure compliance with the scheduling guideposts that serve to ensure the timely progression and resolution of cases. Accordingly, while the court appreciates Mr. Fewell's candor and belated recognition of his own limitations, the tardy explanations do little to ameliorate counsel's all but utter abandonment of this case for months on end. Consideration of this factor militates against plaintiff's motion.

2) <u>Importance of the Proposed Modification to the Scheduling Order</u>

Perhaps the importance of reopening discovery in this matter is best illustrated by the Fifth Circuit's disposition of another Angio-Seal case that has proved instructive in this court's

resolution of prior issues in this case: *Gomez v. St. Jude Medical Daig Division Inc.*, 442 F.3d

919 (5th Cir. 2006). In *Gomez*, the plaintiff was subjected to a catheterization, and, as here, the

surgeon employed an Angio-Seal device to close the hole that he had made in Gomez's femoral

artery. *Id*. Two days after the surgery, plaintiff began to experience extreme pain in her right

leg, which led to additional testing and the discovery that there was a 99 % blockage of

plaintiff's right femoral artery. *Id*. Approximately 45 days after her catheterization, Gomez

underwent surgery to remove a large mass from inside her artery which pathology tests later

identified as suture material and collagen. *Id*.

Gomez's manufacturing defect claim against the Angio-Seal manufacturer survived

summary judgment and was tried before a jury. *Gomez*, 442 F.3d at 926. In her bid to establish

defect and causation at trial, plaintiff presented circumstantial evidence consisting of

> information that the Angio-Seals sent to the Ochsner Clinic, including the one
> used in Gomez's surgery, came from two manufacturing lots. Predistribution tests
> showed a two percent incidence of positive anchor extensions in the lot that
> supplied most of the Angio-Seals sent to the Ochsner Clinic. Gomez also
> presented evidence that FDA adverse-incident reports filed between November
> 1998 and April 1999 showed that six of the Angio-Seals in the reports came from
> the same two lots that had supplied the Ochsner Clinic, and three of those six
> resulted in occlusions, or blockages, in the patients.

*Id*. at 927.

Nonetheless, at the close of the evidence, the district court granted judgment as a matter of law in

favor of the manufacturer on the basis that the evidence was insufficient to show a defect in the

Angio-Seal device or that it caused the clot in Gomez's artery. *Id*.

In its decision reversing the district court, the Fifth Circuit considered the defect and

causation evidence presented by plaintiff and determined that it sufficed to defeat defendant's

Rule 50 motion.[5]  *Id*.  As here, the Angio-Seal device was not retained after surgery.  *Id*.

However, Gomez retained several experts: Dr. Seth Bilazarian, an interventional cardiologist; Dr.

John Eidt, a vascular surgeon; and Dr. Steven Jones, a "biomechanical" engineer, whose joint

testimony "supported an inference that a positive extension of the anchor in relation to the bypass

tube violated the FDA manufacturing specification, made the device defective, and that the

device used on Gomez in March 1999 contained this defect."  *Id*. at 933-934.

In this case, defendant's motion for summary judgment has finally roused plaintiff's

counsel from his slumber of neglect, and he has retained a would-be expert, Steven Jones, Ph.D.,

a "biomedical" engineer, who presumably is the same Dr. Jones employed in *Gomez*.  (*See*

Affidavit of Steven Jones, Pl. Exh. B [doc. # B]).  Based upon limited evidence, Dr. Jones was

able to opine that had the device been working properly, it would not have been "sitting in the

middle of the patient's artery" as later found by Dr. Sartor.  *Id*.  Jones further opined that more

likely than not, the Angio-Seal device used by Dr. Barraza on Linda Rollins was defective in how

it was manufactured, thus causing Rollins' damages.  *Id*.  Obviously, without the benefit of

additional discovery or time, Dr. Jones did not elaborate upon how the device was defective.

In some respects, the instant case contains stronger facts than those presented in *Gomez*.

For instance, although collagen was found in Gomez's femoral artery, it was not definitively

known whether it was human collagen or bovine collagen as used in the Angio-Seal.  *See Gomez,*

*supra*.  Here, in contrast, Dr. Sartor stated that he actually discovered the Angio-Seal sitting in

the middle of the artery, which Dr. Jones has preliminarily indicated would not have occurred

---

[5]  The Rule 50 motion standard is analogous to the motion for summary judgment
standard:  "[t]he district court properly grants a motion for judgment as a matter of law only if the
facts and inferences point so strongly in favor of one party that reasonable minds could not
disagree." *Gomez, supra* (quoted source omitted).

had the device been working properly. (Dr. Sartor's Operative Report, Pl. Exh. D; Dr. Jones's Affidavit, Pl. Exh. B [doc. # 67]). On the other hand, at least at this stage, this case is potentially weaker than *Gomez*, because plaintiff has not yet isolated the lot or batch numbers associated with the Angio-Seal device used in her procedure -- evidence which was used in *Gomez* to uncover a high incidence of defects in test samples from the subject lot. *See Gomez, supra*. Nonetheless, in this case, St. Jude has adduced records identifying the lot numbers of Angio-Seal devices that were shipped to the hospital where plaintiff underwent her procedure. (MSJ, Affidavit of Jeffrey Fecho, Exh. B [doc. # 56]). Through discovery of the quantity of devices retained on hand by the hospital and how quickly the hospital went through them, it should not prove too difficult to reduce the pool of potential lot numbers. In addition, if a properly supported nexus is established, plaintiff may be able to rely upon evidence from her surgeon, Dr. Barraza, that he experienced "deployment problems with the Angio-Seal device on three (3) separate occasions within an approximate thirty (30)-day time frame." (Barraza's Ans. to Interr. No. 33, Pl. Exh. A [doc. # 67]).[6]

In short, given additional time, there is every reason to believe that plaintiff can present evidence regarding defect and causation sufficient to propel her manufacturing defect claim past summary judgment and on to trial.[7] As the matter now stands, however, the court would be

---

[6] Dr. Barraza stated that he contacted the manufacturer's representative and advised them of the problems. *Id*.

[7] As noted in St. Jude's motion for summary judgment there is little or no evidence to support a finding that St. Jude violated any FDA regulations or that if it did, any such violation was a cause in fact of plaintiff's injuries. Nonetheless, as the undersigned is inclined to extend the discovery deadlines, it would be premature to rule out plaintiff's claims on this basis. Should discovery confirm that St. Jude did not violate any FDA regulations and/or that any such violations were not a cause-in-fact of plaintiff's injuries, then plaintiff may voluntarily dismiss those claims without burdening defendant with further motion practice.

compelled to disregard Dr. Jones's affidavit as untimely.  In the absence of his affidavit, plaintiff's evidence is limited to Dr. Sartor's operative report documenting the discovery of the Angio-Seal within plaintiff's artery, and Dr. Barraza's interrogatory responses (from another case) wherein he responded that he experienced deployment difficulties with three Angio-Seal devices within a 30 day period, but that the difficulties were not attributable to him.  Without expert testimony, the significance of the Angio-Seal device being located within plaintiff's artery is not apparent.  Moreover, Dr. Barraza's self-serving testimony does not explain what difficulties he experienced with the devices or how they stem from a manufacturing defect attributable to defendant.  In other words, plaintiff's evidence fails to identify a defect and fails to eliminate alternative causes with "reasonable certainty."  *See Gomez, supra* (citations omitted). Thus, if the court were to enforce the current deadlines, it would result in the summary dismissal of plaintiff's case, despite the reasonable possibility that plaintiff could adduce evidence to support a verdict in her favor.  Accordingly, this factor favors plaintiff, whose case depends upon additional discovery and expert witness testimony.  *Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007).

   3-4) <u>Potential Prejudice and the Availability of a Continuance</u>

  St. Jude contends that it is not emphasizing the scheduling order simply for the sake of "pounding the 'deadlines' issue," rather it stresses that it has been "prejudiced by having to respond to Plaintiff's erratic, last-minute, internally inconsistent motion practice that undermines the entire judicial process."  (Def. Opp. Memo., pgs. 3-4 [doc. # 79]).  While this allegation fails to particularize the prejudice to St. Jude, it is manifest that an extension of the discovery and expert witness deadlines will increase defendant's litigation costs due to its need to then actually engage in discovery, which heretofore, plaintiff has all but declined to initiate.  *See Betzel, supra*.

Of course, an extension of the discovery deadlines may also technically prejudice St. Jude to the extent that the additional discovery and expert witness testimony may fatally compromise its motion for summary judgment. Indeed, the undersigned is not indifferent to the additional costs thus far borne by defendant due to plaintiff's counsel's dilatory conduct or the need to deter such conduct in the future.

Nonetheless, a continuance of the trial date and the issuance of new deadlines will permit the parties to prepare this case as it should have been prepared. In fact, a continuance is the preferred method for allowing a party to present untimely evidence which would otherwise prejudice the opponent. *See Betzel, supra* (discussing designating a witness out of time) (citation omitted). Moreover, rather than effectively dismissing Rollins' case due to her counsel's lack of diligence and relegating her to an onerous malpractice action against her counsel, a continuance, together with targeted sanctions against plaintiff's counsel may redeem the twin interests of ameliorating prejudice to defendant, and deterring similar conduct in the future. Towards this end, such sanctions would take the form of awarding fees for that portion of defendant's original motion for summary judgment which may be fatally undermined by future discovery or the costs associated with the additional discovery – whichever is lower. *See Betzel, supra* (acknowledging that in conjunction with a continuance, less-dispositive sanctions were available to the district court).

It is worth noting, however, that St. Jude filed its motion for summary judgment the very next day after the discovery deadline expired, rather than waiting an additional two weeks until the dispositive motion deadline.[8] While clearly not obliged to do so, there is no indication that

---

[8] Of course, there is no reason to expect that anything would have changed during this period.

defense counsel took the extra step of notifying plaintiff's counsel that he intended to file a dispositive motion as a result of plaintiff's failure to conduct any meaningful discovery in the case. While clearly not obliged to do so, such a practice would have been prudent to dispel any concerns that defendant's dispositive motion would be met by belated requests to extend the scheduling deadlines. Under these circumstances, the undersigned is not inclined to cast plaintiff's counsel with the full amount of St. Jude's "but for" costs incurred due to plaintiff's counsel's inattention to the case. Nonetheless, prior to the taking of additional discovery or the resolution of any subsequent dispositive motion, the appropriate measure of sanctions is not now apparent. There is every reason to believe that plaintiff's counsel can make appropriate in kind compensatory accommodations to defense counsel during the future discovery process (supplemented by a fiscal contribution, if necessary), as well as readily conceding any claim that is ultimately not supported by further discovery – including the manufacturing defect claim. Moreover, defendant's self-interest in maximizing the recompense exacted from plaintiff's counsel should work to uphold the court's aligned interest in assuring that counsel will heed future scheduling orders. In the event that the parties are unable to mutually resolve the compensation issue in good faith, defendant may petition the court for reasonable "but for" fees at the conclusion of the case.

In sum, considerations two, three and four compel an extension of the discovery and expert witness deadlines in this matter. *See Betzel, supra*.

## II. Rule 56(f) Continuance

Plaintiff seeks a continuance of St. Jude's pending motion for summary judgment so she can conduct additional discovery. Plaintiff's motion is contemplated by Rule 56(f) which provides that,

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)     deny the motion;

(2)     order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3)     issue any other just order.

Fed.R.Civ.P. 56(f).

A non-movant seeking relief under Rule 56(f) must demonstrate: "(1) why [she] needs additional discovery and (2) how that discovery will create a genuine issue of material fact. A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 162 (5th Cir. 2006) (citations and internal quotation marks omitted).

As discussed above, the undersigned has determined that plaintiff needs additional discovery which has the potential to resuscitate her currently non-responsive case. Additional discovery may obviate the grounds for defendant's motion, and plaintiff may voluntarily streamline the issues and claims in response to the discovery. In any event, discovery will likely significantly alter the landscape of the case such that a new motion, if appropriate, will facilitate a clean record and its ultimate disposition. In lieu of a potentially lengthy continuance of the pending motion, however, the undersigned finds that the appropriate Rule 56(f) remedy is to deny defendant's motion for summary judgment without prejudice to defendant's right to re-urge the motion once discovery is complete, if appropriate.

<u>**Conclusion**</u>

For the reasons set forth above,

The motion to reopen discovery [doc. # 69] filed by plaintiff, Linda Rollins, is hereby

**GRANTED**.  The trial setting, pretrial conference, and all associated deadlines are upset.  A new

scheduling order will issue in due course.

Plaintiff's motion to continue hearing on defendant's motion for summary judgment [doc.

# 69] is hereby **DENIED**.[9]

IT IS SO ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of August 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[9]  The undersigned will issue a separate report recommending that defendant's motion for summary judgment be denied, without prejudice, for the reasons set forth herein.