IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LINDA ROLLINS** | * | **CIVIL ACTION NO. 08-0387** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **ST. JUDE MEDICAL, INC.** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is a motion for attorney's fees and costs filed by defendant St. Jude Medical, Inc. ("St. Jude"). Doc. # 163. For reasons set forth below, it is recommended that the motion be **GRANTED** in part, and **DENIED** in part.

BACKGROUND

On February 20, 2007, Linda Rollins underwent an angiogram performed by Dr. J. Michael Barraza ("Dr. Barraza") at St. Francis Medical Center in Monroe, LA. Doc. # 1, Ex. 1 at ¶ 6. In her petition, plaintiff alleged that a medical device known as an Angio-Seal was used during the procedure and that there were "problems with the deployment of the Angio-Seal." *Id* at ¶ 7. After the procedure, Rollins developed a large hematoma in her right groin and complained of pain in her leg, whereupon she returned to St. Francis Medical Center and was rushed into emergency surgery, performed by Dr. Frank Sartor ("Dr. Sartor"), for a right external iliac to distal common femoral bypass with a Gore-Tex graft and a thrombectomy. *Id* at ¶ 9. According to Rollins, this procedure neither cleared the thrombus nor restored a pulse to the foot; therefore, a popliteal exploration was performed below the knee with selective thrombectomies on the posterior tib and anterior tibial vessels. *Id* at ¶¶ 9-10. In his operative report, Dr. Sartor

noted that the Angio-Seal was sitting "in the middle of the artery" and that "there was a lot of damage to the common femoral artery." *Id*. at ¶ 10.  Rollins contends that the Angio-Seal device was defective based on various theories of liability, and that the defect caused her injuries and damages.  *Id.* at ¶ 12.

On March 24, 2008, defendants removed the case to federal court on the basis of diversity, 28 U.S.C. § 1332.  Doc. # 1.  Following removal, defendants filed a motion to dismiss, which by October 2008 resulted in two amended complaints and the dismissal of all but plaintiff's manufacturing defect claim as well as her claim that St. Jude's failure to comply with FDA reporting requirements resulted in the use of a defective Angio-Seal in her operation.  *See* doc. #s 28-39.  In April 2009, the parties agreed to dismiss various defendants and effectively substituted St. Jude Medical, Cardiology Division, Inc. d/b/a St. Jude Medical Cardiovascular Division, a wholly owned subsidiary of St. Jude Medical, Inc. as the sole defendant in this matter.  *See* doc. #s 48-50.

In the meantime, on December 18, 2008, the court issued a scheduling order that set forth various deadlines in this matter.  Doc. # 45.  Discovery was to be completed by June 25, 2009.  *Id.* at 4.

On June 26, 2009, St. Jude filed a motion for summary judgment seeking dismissal of plaintiff's remaining claims in no small part because of the failure of plaintiff's counsel to produce any evidence within the discovery deadline to support Rollins' claims.  Doc. # 53.  On July 31, 2009, plaintiff filed her opposition to St. Jude's motion for summary judgment and attached *inter alia* an affidavit from Steven Jones, Ph.D. (Dr. Jones), a professor of biomedical engineering at Louisiana Tech University.  Doc. #67; Doc. 67, Exs. B-C.

In his affidavit, Dr. Jones averred that he had reviewed the medical records of Linda Rollins while she was hospitalized at St. Francis Medical Center as well as Dr. Barraza's and Dr. Sartor's operative reports. Doc. # 67, Ex. B. Dr. Jones also averred that he is "personally familiar with the Angio-Seal device used by Dr. Barraza" in Rollins operation. *Id.* Finally, Dr. Jones averred that "had the device been working properly, the device would not have been 'sitting in the middle of the patient's artery,' as stated by Dr. Sartor in his operative report, and there would not have been damage to the artery found by Dr. Sartor." *Id.*

On August 7, 2009, plaintiff filed a motion to reopen discovery and to continue the hearing on the motion for summary judgment in order to render Dr. Jones' affidavit, which plaintiff had produced after the discovery deadline, a timely submission. Doc. #69. On August 24, 2009, this court granted plaintiff's motion, in large part because plaintiff's claims would not survive St. Jude's motion for summary judgment without the admission of Dr. Jones' affidavit. Doc. # 82 at 9-10. Accordingly, in the same opinion, this court also denied St. Jude's motion for summary judgment. Doc. # 82.

On March 24, 2010, the parties deposed Dr. Jones. Doc. # 137. As plaintiff's attorneys themselves concede, Dr. Jones "recanted on the majority of his affidavit testimony" in his deposition. Doc. # 179, Ex. 1. Dr. Jones testified that his averment in his affidavit that he was "personally familiar with the Angio-Seal device used by Dr. Barraza" was "a little misleading" in that he was not "personally familiar with that particular device that [Dr. Baraza] deployed or even specifically with that particular model of device." Doc. # 137 at 65-66. Dr. Jones also testified that he was not prepared to provide an expert opinion on the particular manufacturing defect that allegedly caused Rollins' injuries. *Id.* at 46, 49.

3

In light of Dr. Jones' deposition, St. Jude filed a motion to exclude Dr. Jones as an expert witness and re-urged their motion for summary judgment. Docs. # 138, 139. This court set a *Daubert* hearing on May 18, 2010 to test both Dr. Jones' qualifications as well as the admissibility of his opinions. Doc. # 148. At the hearing, however, one of plaintiff's attorneys stated that he no longer planned to call Dr. Jones as an expert witness at trial and therefore would not be calling him at the *Daubert* hearing. Doc. # 164 at 2.

This court then proceeded to hear and orally grant St. Jude's motion for summary judgment. *Id.* at 6. In a written ruling, this court observed that plaintiff was left with only a theory of *res ipsa loquitur* based on the testimony of Dr. Barazza when Dr. Jones dropped out as an expert witness. Doc. # 160 at 2. Citing *Cangelosi v. Our Lady of the Lake Regional Med. Cent.*, 564 So. 2d 654, 660 (La. 1990), which provides that "[a]pplication of the principle [of *res ipsa loquitur*] is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that was due to his negligence," the court determined that summary judgment in favor of St. Jude was appropriate because "an inference can be reasonably be drawn that something other than a defect in the Angio-Seal caused plaintiff's injuries." Doc. # 160 at 2.

On June 9, 2010, St. Jude filed the instant motion for attorney's fees and costs. Doc. # 163. In their briefs, St. Jude essentially seeks attorney's fees and costs in connection with plaintiff's attorneys' conduct at four different points in these proceedings.

First, St. Jude contends that plaintiff's attorneys failed to conduct a reasonable investigation of Dr. Jones' qualifications prior to submitting his affidavit. Doc. # 180 at 2-8. Second, St. Jude argues that plaintiff's attorneys did not act in good faith in opposing St. Jude's

motion to exclude Dr. Jones as an expert witness because Dr. Jones' deposition testimony essentially disqualified him as an expert witness. *Id.* at 8-10. Third, St. Jude asserts that plaintiff's attorneys pursued their client's suit long after it lacked merit. *Id.* at 11-12. Finally, St. Jude argues that plaintiff's attorneys failed to comply with an order issued by this court on April 28, 2010 directing plaintiff's attorneys to identify the manufacturing defect that allegedly caused plaintiff's injuries. Doc. # 166 at 2; *see also* doc. # 142 at 8.

For its first three arguments, St. Jude seeks attorney's fees and costs under Rule 11(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. For its final argument regarding plaintiffs' attorneys' alleged failure to comply with a discovery order, St. Jude seeks attorney's fees and costs under Rule 37(b)(2) of the Federal Rules of Civil Procedure. This court will consider each of these arguments in turn.

## LAW AND ANALYSIS

**I. Claims Under Rule 11 and 28 U.S.C. § 1927**

**A. Rule 11 and 28 U.S.C. § 1927**

Both Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 authorize sanctions for improper attorney conduct. Rule 11(b) of the Federal Rules of Civil Procedure provides:

> By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by

      existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

          (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

          (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b) sets forth a negligence standard of culpability. *Vanderhoff v. Pacheco*, 344 Fed. Appx. 22, 28 (5th Cir. 2009). In contrast, 28 U.S.C. § 1927 permits sanctions only when there is "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The statute provides, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."

      **B. St. Jude's Claims**

          **1. Dr. Jones' Affidavit**

With its first claim, St. Jude argues that plaintiff's attorneys did not conduct a reasonable investigation of Dr. Jones' qualifications before submitting his affidavit. St. Jude further points out that if plaintiff's attorneys had conducted a reasonable investigation of Dr. Jones' qualifications, they would have determined that he was unqualified to serve as an expert witness, and thus would not have submitted his affidavit in the first place.

Rule 11 imposes a "presignature obligation" on attorneys "to conduct a reasonable inquiry into the qualifications of their expert before filing a pleading containing erroneous information." *Duncan v. WJLA-TV, Inc.* 106 F.R.D. 4, 6 (D.D.C. 1984).

6

In their briefs, plaintiff's attorneys stated that they determined that Dr. Jones could serve as a suitable expert witness in the instant matter because he had qualified as an expert witness in another products liability case involving an Angio-Seal device. Doc. # 179 at 5. The Fifth Circuit's opinion in *Gomez v. St. Jude Medical Daig Division Inc.*, 442 F.3d 919, 933-36 (5th Cir. 2006), confirms that Dr. Jones did indeed previously provide expert testimony regarding an allegedly defective Angio-Seal device.

Under Rule 11, which merely imposes a "reasonable inquiry" obligation upon attorneys, the investigation that plaintiff's attorneys conducted of Dr. Jones qualifications prior to submitting his affidavit is not sanctionable. The undersigned cannot find that Rule 11 required a more thorough investigation under the circumstances.

### 2. *Daubert* Hearing

As previously noted, at his deposition on March 24, 2010, Dr. Jones testified that he was not prepared to render an expert opinion on the allegedly defective Angio-Seal device used in plaintiff's operation. Doc. # 137 at 49. St. Jude consequently filed a motion to exclude Dr. Jones as an expert witness, and plaintiff's attorneys filed an untimely brief in opposition to the motion in which they essentially argued that Dr. Jones was qualified to testify as an expert witness in this case because of the expert testimony he previously provided in *Gomez*. Docs. # 138, 150. However, at the *Daubert* hearing that this court held on St. Jude's motion to exclude on May 18, 2010, plaintiff's attorneys announced that they no longer planned to call Dr. Jones as an expert witness and therefore were not calling him at the *Daubert* hearing. Doc. # 164 at 2. Accordingly, this court summarily granted St. Jude's motion to exclude. *Id.* at 2-3. Plaintiff's attorneys subsequently conceded that Dr. Jones "recanted on the majority of his affidavit

testimony" at his deposition. Doc. # 179, Ex. 1.

While plaintiff's attorneys did not act with the requisite bad faith to be sanctionable under 28 U.S.C. § 1927, plaintiff's attorneys are clearly sanctionable under Rule 11. Plaintiff's attorneys' opposition to St. Jude's motion to exclude could not have been formed after a reasonable inquiry because Dr. Jones admitted himself at his deposition that he was unqualified to render an expert opinion as to the particular Angio-Seal device used in plaintiff's operation. Once Dr. Jones made this admission, the mere fact that he had previously been qualified as an expert witness in a prior products liability case involving an Angio-Seal device became irrelevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (the admissibility of an expert opinion is dependent upon the facts of a particular case). Plaintiff's unreasonable opposition to St. Jude's motion to exclude thus resulted in the unnecessary delay as well as the needless increase of costs of this case. *See* FED. R. CIV. P. 11(b)(1).

Rule 11(c) authorizes a court to impose an "appropriate sanction" on attorneys who violate Rule 11. FED. R. CIV. P. 11(c)(1). In determining the appropriate sanction for plaintiff's attorneys, this court observes that Rule 11 sanctions are meant to serve as a deterrent. FED. R. CIV. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). Furthermore, "the sanction imposed should be the least severe sanction adequate to the purpose of Rule 11." *Thomas v. Capital Sec. Sys.*, 836 F.2d 866, 878 (5th Cir. 1988).

In this case, the appropriate sanction is compensating St. Jude for the reasonable attorney's fees and costs that it incurred in connection with the *Daubert* hearing on May 18, 2010. This sanction targets plaintiff's attorneys' most unreasonable conduct - their failure to

8

withdraw Dr. Jones as an expert witness until the day of the *Daubert* hearing even though they were fully aware that the hearing was unnecessary because, as they noted themselves, Dr. Jones "recanted on the majority of his affidavit testimony" at his deposition.[1] *See* Doc. # 179, Ex. 1 at 2. Furthermore, the sizeable amount of this award is sufficient to deter further Rule 11 violations by plaintiff's attorneys. *See Thomas*, 836 F.2d at 878.

### a. Calculation of Attorney's Fees in connection with *Daubert* Hearing

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The product of this calculation is commonly referred to as the "lodestar" amount. *Farrar v. Hobby*, 506 U.S. 103, 118 (1992).

The lodestar amount "is more than a mere 'rough guess' or initial approximation of the final award to [be] made." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-900). "A strong presumption that the lodestar figure . . . represents a 'reasonable fee' is wholly consistent with the rationale behind the usual fee-shifting statute." *Id.* After computing the lodestar amount, the court must determine whether it should be adjusted in light of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2]

---

[1] Plaintiff's attorneys' failure to withdraw Dr. Jones as an expert witness until the day of the *Daubert* hearing was clearly unreasonable, but is nevertheless not sanctionable under 28 U.S.C. § 1927. Plaintiff's attorneys ultimately did withdraw Dr. Jones as an expert witness. Their failure to do so in a timely fashion smacks of carelessness, but not bad faith.

[2] The 12 *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to properly perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of this case; (5) the customary

### i. Determination of the Lodestar

St. Jude submitted an itemized report which provided that its lead counsel and local counsel incurred, respectively, $2,870 and $1,365 in attorney's fees in connection with the *Daubert* hearing on May 18, 2010. The amount that St. Jude's lead counsel incurred in attorney's fees on May 18 is based on 8.20 hours of work billed by one attorney at an hourly rate of $350. The amount that St. Jude's local counsel incurred in attorney's fees on May 18 is based on 7 hours of work billed by one attorney at an hourly rate of $195.

### ii. Reasonable Hourly Rate

The first step for this court in calculating the lodestar amount is to determine the appropriate hourly rate to be used in the calculation. *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part*, 903 F.2d 352 (5th Cir. 1990). "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). The relevant legal market is the community where the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). A reasonable hourly rate for a particular community can be established by reference to rates awarded in prior cases. *Entm't Software Ass'n v. Foti*, No. 06-431, 2007 U.S. Dist. LEXIS 46381, at *10 (W.D.La. Apr. 10, 2007).

In the undersigned's experience, the $350 hourly rate of St. Jude's lead counsel is significantly greater than the prevailing market rates in Monroe's legal community. In calculating

---

fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

the lodestar, the hourly rate of St. Jude's lead counsel will therefore be reduced to $200, which is still at the higher end of hourly rates in Monroe. The $195 hourly rate of St. Jude's local counsel will remain unchanged.

### iii. Number of Hours Reasonably Expended

The second step in calculating the lodestar amount requires this court to determine the number of hours reasonably expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The party requesting fees has the burden of establishing this number. *Id.* at 437. The court may reduce the award if the documentation of hours is inadequate or if the hours are "excessive, redundant, or otherwise unnecessary." *Id.* at 433-34. A prevailing party may receive attorney's fees for an unsuccessful claim as well, but only if that claim involves facts or related legal theories in common with the successful claims. *Id.* at 434.

The itemized reports that St. Jude submitted indicate that its lead counsel and its local counsel expended, respectively, 8.2 hours and 7 hours, on May 18, 2010 in connection with the *Daubert* hearing. However, to meet its burden of showing that the number of hours billed was reasonable, St. Jude must also prove that its counsel exercised billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.*; *see also Abner v. Kansas City Southern Railway Co.*, No. 03-CV-0765, 2007 U.S. Dist. LEXIS 45222, at *5-6 (E.D. La. June 21, 2007) ("conclusory assertions [that counsel exercised judgment] do not constitute billing judgment."). "The proper remedy for omitting evidence of billing judgment . . . [is] a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.* Since St. Jude has not provided any showing

11

that its counsel exercised billing judgment, the undersigned recommends that the total award be reduced by fifteen percent, an amount intended to substitute for the exercise of billing judgment. After taking into account this fifteen percent reduction, as well as the reduction of the hourly rate of St. Jude's lead counsel, the lodestar amount for St. Jude's lead counsel and local counsel is, respectively, $1,394 and $1,160. The total lodestar amount for St. Jude is thus $2,554.

### iv. Reasonableness of the Lodestar Amount

The court now applies the remaining *Johnson* factors to determine if the lodestar amount should be adjusted. The court may not double count any *Johnson* factor in calculating the lodestar amount. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Seven of the *Johnson* factors are presumably fully reflected in the lodestar amount: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the preclusion of other employment; (iv) special time limits imposed; (v) the results obtained; (vi) the experience, reputation, and ability of counsel; and (vii) the quality of representation. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565; *Walker v. U.S. Dep't of Hous. and Urban Dev.*, 99 F.3d 761, 771-72 (5th Cir. 1996); *Shipes*, 987 F.2d at 321-22.

The record in this case does not support an adjustment of the lodestar amount based on the remaining *Johnson* factors. For example, there is no evidence that the case was particularly undesirable. Nor is there any indication that the professional relationship between St. Jude and its counsel merits an adjustment.

### b. Calculation of Costs in connection with *Daubert* hearing

The itemized reports that St. Jude submitted also indicate that its lead counsel incurred $2,217 in travel expenses in connection with the *Daubert* hearing. The undersigned has reviewed

these expenses and finds that while the amounts, expended for meals is reasonable, the amount for airfare and hotels is excessive. A brief online search of non-refundable airline tickets from Minneapolis to Monroe shows that, even purchasing a ticket less than a week before his departure date, defense counsel should have been able to fly to Monroe for less than $1,000.00. Thus, even allowing $200 per night for hotels, an award of no more than $1,400.00 is reasonable for this portion of the defendant's costs.

Thus, the total reasonable amount of costs and fees that should be reimbursed to defendant by plaintiff is $4,024, ($2,554 attorney fees + $1,470 for costs).

### 3. Plaintiff's Attorneys' Prosecution of the Case

St. Jude also contends that plaintiff's attorneys should be sanctioned, at the very least under Rule 11, for pursuing this case once it became apparent that it lacked evidentiary support. St. Jude emphasizes several points in the proceedings when plaintiffs' attorneys could have reasonably determined that their case was meritless. Doc. # 180 at 12. The last point at which plaintiff's attorneys could have reasonably discontinued the litigation, St. Jude argues, was when they withdrew Dr. Jones as an expert witness. Without the testimony of Dr. Jones, plaintiff's attorneys were left with only circumstantial evidence to prove that their client was injured by a manufacturing defect. However, even at this point, Rule 11 did not mandate plaintiff's attorneys to discontinue the instant litigation.

In Louisiana, a manufacturing defect may be established by circumstantial evidence. *Hanover Am. Ins. Co. v. Trippe Mfg. Co.*, 843 So. 2d 571, 576 (La. Ct. App. 2003). Accordingly, plaintiff's attorneys' prosecution of Rollins' case even after they were relegated to proving it with circumstantial evidence was not frivolous or otherwise sanctionable under Rule 11.

Furthermore, the circumstantial evidence upon which plaintiff's attorneys were largely forced to rely, the affidavit of Dr. Barraza, was relatively strong circumstantial evidence. In his affidavit, Dr. Barraza averred that he had deployed Angio-Seal devices on "hundreds of occasions" between 2002 and 2007 "without any problems or complications." Doc. # 138, Ex. 2. Then, in a thirty day period in 2007, Dr. Barraza averred that he deployed three Angio-Seal devices that "failed to properly deploy," including the one that he used on Rollins. *Id.*

**II. Claim under Rule 37(b)(2)**

Rule 37(b)(2) of the Federal Rules of Civil Procedure essentially authorizes a court to sanction a party for not complying with a discovery order. With its final claim, St. Jude contends that plaintiff's attorneys should be sanctioned under Rule 37(b)(2) for failing to comply with this court's April 28, 2010 order requesting plaintiff's attorneys to identify the manufacturing defect that allegedly caused plaintiff's injuries. *See* doc. # 166 at 12; *see also* doc. # 142 at 6-8.

Plaintiff's attorneys state that they did not comply with the discovery order because they were not able to discover a specific manufacturing defect. This is a legitimate reason for plaintiff's attorneys not to have complied with the discovery order, and also one which undoubtedly must have pleased St. Jude.

### CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that defendant's motion for attorney's fees and costs (doc. # 163) be **GRANTED** to the extent that the motion seeks sanctions for plaintiff's attorneys' opposition to defendant's motion to exclude Dr. Jones as an expert witness, and that defendant be awarded $4,024 in attorney's fees and costs.

**IT IS FURTHER RECOMMENDED** that defendant's motion for attorney's fees and costs be otherwise **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of August, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE